Three argued cases today. The first is number 13-1085, Chang v. Rea. Mr. Chang? Yes. Good morning, Your Honors. May I please have court? My name is HSUAN-YEH CHANG, and I present myself in this case against the Patent Office. Meanwhile, I'm a member of the Federal Circuit Board in Houston, and I pay federal income tax. What is your immigration or work visa status? Right now? Yes. H-1. Which means what? Which means I am a temporary worker in this country, but I'm trying to get a green card. So there are several parallel cases, at least two parallel cases going on. And so the H-1 visa allows you to work for a particular organization, is that correct? Yes. And what organization is that? Burrison-Levinson. A law firm. Burrison-Levinson? A law firm in Boston? Okay. All right. Thank you. Okay. So in the past 30 or more years, the Patent Office has tied the license to practice before it to the license to be employed. Section 2 of the Patent Law grants the Patent Office the statutory authority to administer recognition of patent practitioners by making rules under Section 553 of the APA. Congress did not grant the Patent Office any statutory authority to administer immigration law. The license to be employed is actually governed by the U.S. immigration law, not patent law. You're currently authorized to act before the Patent Office on behalf of the clients of your current law firm, is that right? Yes, that's correct. Okay. Now, is your relationship with your current law firm such that you're allowed to freelance? Not for this particular one, but in the previous one, yes. So the question is, if right now, your authority by your law firm is limited, and you couldn't do anything more than the PTO has already authorized you to do, is there any current controversy that really exists? Well, not necessarily, unless there's a conflict of interest. You're capable of repetition, yet evading review, right? Yes. Yes, because at the time when I was getting the employment authorization document, I was actually supposed to be able to self-employ and represent my own client. Even though there's only a two-year limit, it's renewable, and at the same time, there's a pending green qualification, and the success of that green qualification is actually contingent upon the success of my business. If I can employ people with my law firm, I can present to the USCIS a successful case and eventually get my green card. Can I ask, does it make any difference for 11.6b that you're now an attorney? No. The provision that I thought we had been talking about is one that says any alien who is not an attorney, et cetera, et cetera. Right. Well, what's the provision for an alien who is an attorney getting registration? There's simply no such provision. If you are an alien, no matter who you are, regardless if you are an attorney or non-attorney, you are not able to register in the panel office. You simply get limited recognition. Limited recognition is like a temporary status for whoever, as long as you're an alien here in the States, temporarily, literally. Is the only difference between limited recognition and registration that under limited recognition, you're confined to working for a particular employer, whereas in registration, you can work for whomever you want to? That's correct. Okay. So, basically, let me give you a simple example here. The operation of any business may require multiple governmental licenses, for example, like a restaurant. If you run a restaurant, you need a lot of licenses, for example, like a cleanness license, a fire license, sometimes a liquor license. But can you take away a cleanness license when the restaurant does not comply with fire license regulations? No. So, in order to run a patent business, you, of course, need to get multiple governmental licenses, especially for aliens. Aliens need to get the license from the patent office as well as the license from the immigration services. But the patent office cannot take back the license to practice before it, simply because the other agency determines the other status, right? Do you see a distinction between this case and La Cervera, or are you asking us to rethink the program? Well, I'm actually intending to ask the court to overrule La Cervera, if that's possible. Well, another thing is, I mean, my situation is actually different from La Cervera, because La Cervera, she's never got any immigration – I mean, she's never got any EAD that allows her to work for anyone to start her own business. But in my case, I got the EAD from the USCIS that allows me to work for anyone. And that was or was not time-limited, the EAD? It was time-limited, but that's renewable, contingent on dependency of my green card application. It was for a two-year period? Yeah, and renewable each year. As soon as my green card application is pending, I can renew it. Well, why has that lapsed now? Because I couldn't present to the USCIS that I have the ability to run my own patent business, because I was denied registration. The USCIS basically told me that, because you've never been registered as a patent agent, how can you show us that you can run a patent business? You mean that the continuation of the immigration status that would have allowed you to freelance was terminated because you couldn't show to the immigration service that you had patent office registration? Right, because it was denied based on that reason. My green card application was denied because I cannot show to the immigration services saying I'm allowed to practice patent law in this country. Of course, there's nothing in the record that says that. No, because I'm always given limited recognition, never full registration. Do you have an employment contract with your current employer that covers a period of years? No, no. At will? At will, everything's at will. The position I'm advancing right now is that immigration status changes over time. Not only are non-immigrant aliens could become a U.S. permanent resident or citizen, U.S. citizens can also abandon their citizenship by expatriation process, right? Because the patent office is not a federal agency administering immigration law. The reality is the patent office has absolutely no control over the status of practitioners. And the patent office actually acknowledges that. So by way of example, a registered patent practitioner can leave this country, stay in another country with or without employment authorization of that country, and then abandon his green card or citizenship, right? And so that he can set aside all his tax liabilities. And he can continue practicing before the patent office as if he's a U.S. citizen. And the U.S. patent office has nothing to do with it because they have absolutely no control of this person's status. Well, they make the determination as to whether or not your right to practice is restricted at the time you make the application. So at the time they make the application, they can't hypothesize about what someone might do at some point in the future, correct? Yeah, so that's why attorneys in state courts don't need to show their citizenship or permanent residency, right? Because I can represent my client here in this court without having to show Federal Circuit that I'm allowed to be employed in this country. The agency has the authority to interpret its own rules and regulations in a way that it believes is consistent with what it believes is responsible practice before it. Don't we have to give some deference to that determination? We give some deference, but the deference has to tie with the expertise because there are several Supreme Court cases that target specifically on this question. And another question is the patent office is actually incorporating immigration rules in their own rules. They are not actually interpreting their own rules. They are incorporating the rule from another agency into their rule. Do you think the mere fact that they refer to a definition under the immigration law somehow means that they're applying or interpreting immigration law? Yeah, let me give you another example. Say, for example, a small entity status as well now, right? In order for an applicant to establish small entity status, do they have to show the patent office that the SBA permitted them to be a small entity? No. The applicant basically certified that they are a small entity. The consequence of misrepresentation would be the patent gets invalidated. So the consequence of a patent practitioner being certified that he's capable of being employed in this country would be permanent termination of his license, right? Now I'm not understanding this argument. This is different than anything you've said in your briefs. You're just saying you shouldn't have to prove anything. You should just be able to say I'm unqualifiedly able to live in this country forever. And if you're lying, that should be a separate consequence? Well, that's another thing. If we're talking about deference here, we're talking about the deference to the agency's expertise, right? I'm confused. It seems to me there are two possible claims you could make here. One is that the agency has misinterpreted its regulations. That seems to me a very hard road to hobble because they have a lot of discretion under Cleveland baseball and other cases about how to interpret their regulations. Another alternative challenge here it seems to me that you're making is that the application of the regulation under these circumstances is arbitrary and capricious. And that really seems to be what you're really saying and that part of the arbitrariness is looking to the INS status or differentiating between U.S. residents abroad. There are various claims that you're making about arbitrariness. Isn't this really – isn't your theory really that the PTO is acting in an arbitrary way? Yeah, because they don't understand what's going on in my employment authorization. They eventually find out that my employment authorization can't allow me to be self-employed during the court proceedings. They just don't understand what's going on in that authorization. They don't have the expertise. Can I ask you, your home country, does it recognize the reciprocal privileges that Law 1146 talks about or not? Honestly speaking, if you come to my country, Taiwan, and you can pass a patent over there, anyone can be registered because the country Taiwan allows everyone around the world to register before the patent office if you can pass a bar. So are you saying that based on reciprocity, you would be able to practice before the PTO? No, that wasn't my claim because I haven't been recognized for practicing in Taiwan yet. I see. Yeah. Okay. Okay. Do you want to save the rest of your time? Yeah. So, yeah, I want to save the time for the bottom. Thank you. May it please the Court. Justice Durant, I want to answer your question first. If an alien becomes an attorney, there's a provision 11.6A, which is exactly parallel to 11.6B in terms of what the alien's immigration status is. So whether he's an attorney or a patent agent, the rules are basically the same. The decisions of the PTO and the district court here should be affirmed basically because they're exactly on point with this Court's decision in Lacovera in 2006. The law is exactly the same. The facts are virtually the same. The only difference between this case and the case in Lacovera is that Ms. Lacovera had a restriction on who she could work for and how long she could be in the United States. And Dr. Chang, at the time he filed his petition with the PTO, was only limited in how long he could work in the United States. Can I ask you this? And the reasoning in Lacovera doesn't quite answer this for me. I understood that case to be one that is, in effect, an upside-down version of this, where the Court said there's an immigration policy that says you may not work here or for very long. And the PTO concluded, and this Court said it was permissible to conclude, that granting registration would undermine the immigration policy. As I understand what's going on here, it's, in effect, the opposite of that. You're saying the immigration rule, the visa, says you can only work for a certain number of years. And if we grant registration, that will undermine our policy, PTO policy, about what a registered agent has to be capable of doing, which seems to me, as I say, something like an upside-down version of Lacovera, and I should say not the most natural interpretation of the language of 11.6. Well, I think it's going in both directions in this case. So I think it's the same issue as it was in Lacovera in terms of the PTO doesn't want to give a broader employment opportunity than what the USCIS is giving Dr. Chang. Here, it's just a temporal issue. It's not who we can work for. But you're right. It does go both ways because… If the visa limit says you can't work beyond these certain circumstances, why does it matter if the PTO says, well, as far as we're concerned, you can. They still can't. Well, it matters for a couple reasons. One, the PTO has two different regimes in terms of how it registers people. So his position may seem consistent with 11.6, which allows full registration, but we have a completely different avenue for people who are temporarily on 11.9, and that's where somebody situated as Dr. Chang belongs. The reason that you give only limited recognition is that even if he has a visa which allows him to work to freelance, that your theory is that visa lasts only two years and the proceedings, the prosecution before the PTO typically takes longer than two years. So he might not be able to finish it, and that would be a detriment to his clients. Is that a fair statement? Correct. Exactly. Exactly, Your Honor, because we have an obligation to protect the public, and as the court is well aware, the penalties for not meeting a certain filing deadline or paying a maintenance fee can be quite draconian. And so what the PTO is saying to persons in Dr. Chang's situation is you can practice before the office, but effectively you have to affiliate with a permanent practitioner who can have his number and contact information in the file. As I understand it, there's nothing problematic about a citizen registrant going to live abroad and doing his representation work from wherever abroad. That's correct. I mean, if you are a United States citizen, you're fully registered, and you live abroad for a certain period of time, you may continue to be registered. And that happens, I think Dr. Chang discussed some of this in his brief. Non-trivial, I'm apt to say. 3% of the time. So you're talking about maybe 1,000 registered practitioners out of over 50,000. The difference between him and that person is that right now that person could continue the representation while abroad, but Dr. Chang can't do that because he hasn't been registered as a patent agent in Taiwan. Is that correct? Well, that's right, because there are only certain circumstances when foreign nationals living outside the United States can still practice. Suppose he had been registered in Taiwan. Suppose he were registered in Taiwan and achieved reciprocity. Would he then be able to be registered as a patent agent in this country because he could begin his prosecution while here and continue it from Taiwan the way an American citizen living abroad can continue it? I don't think he would be fully registered, but he would be entitled to practice for the office under the reciprocity provision, which I think is 11.60. I can look that up. That would essentially move this whole discussion because he wouldn't have to go through this exercise if he was entitled to practice under the reciprocity provision. Well, it wouldn't move it because I believe the reciprocity provision says while he's living in Taiwan, he can prosecute applications on behalf of nationals of Taiwan. So it wouldn't be a totally open-ended type of registration where he could represent anyone for any purpose. Can I just clarify something? I had thought that this reciprocity provision was not limited to individuals who in fact had the home country license, the authority, but rather was that applied if, to take this example, if Taiwan was a country that substantially grants reciprocity, then the provision applies. So it doesn't actually matter that he has not in fact gotten the Taiwanese representation if Taiwan is a country that would provide the reciprocal privileges. That's the way this language seems to me to be written. Well, to be honest, Your Honor, that provision isn't directly at issue in the case because it's not what Dr. Chang is seeking. But my understanding of the reciprocity provision is if he were living in Taiwan and if he were registered before the Taiwan Patent Office and if he wanted to practice here and they allowed similarly situated people in the U.S. to practice there, then he would be able to practice from outside the U.S. before the Patent Office purely for people who lived in Taiwan. If you would go back to Judge Dyke's question, that means that if in fact Mr. Chang were to leave this country, even if he was authorized to practice before the Patent Office in Taiwan, he would not be able to continue to represent individuals inside the country. Correct. That's correct, Your Honor. Only Taiwanese entities. Just Taiwanese entities, right. If they had reciprocity, which they do not. They don't? They do not. We have the only country, we have a reciprocal relationship right now. The only country who provides substantially reciprocal privileges to the U.S. is Canada. Is that by agreement or do you just look and tell what other country? I mean, does it have to be an actual agreement? I believe we evaluate what their registration provisions are and as it stands right now, they're the only countries who give substantially reciprocal privileges to U.S. practitioners. So then we in turn give that to Canadian practitioners. I also wanted to mention something, Your Honor, that Judge Dyke latched onto, which is what is Dr. Chang's current immigration status? And I think the history of this case demonstrates the propriety of the USPTO's approach. Dr. Chang already has been in the U.S. under four different employment authorizations, each with different conditions. So it's much more appropriate that Dr. Chang is recognized under 11.9, which is a very dynamic provision. It's a very flexible provision for Dr. Chang. Basically, he can come to the U.S. and say, this visa's expired, now I'm working for this firm for this period of time, and he receives a letter saying you have your limited recognition that basically mirrors his visa status. Is he correct that the only difference between the limited recognition and registration is that under limited recognition you are restricted to working for a particular U.S. entity? You have to affiliate with a U.S. entity? Well, yes. To be a little bit more specific, if his visa, for example, says he can work for the law firm of Finnegan for two years, then our limited recognition letter says you can work, prosecute applications for the law firm of Finnegan until your visa expires. But there's no other difference between being registered and limited recognition? Correct. And then he left the law firm of Finnegan. He ended up going to another company, Nantero. We issued another limited recognition, which said he could do that and so on and so forth. And that could continue so long as his limited recognition continues. And it's limited to the clients of those respective firms as well? Correct. Correct. The visa limitations are pretty strict as well. I mean, his visa says he can only act as a, then at the time, a technical agent on behalf of Finnegan. So then we just mirrored what USCIS says. And I think that's basically at bottom what this case comes down to, which is that Dr. Chang is engaging in an effort to present various opportunities where he may be able to change his status from a temporary to a permanent status before a different government agency. And that's something that he can pursue. And if and when his circumstances change, he can come back to us and we can fully register him or we can continue to extend his limited recognition as appropriate with whatever his employment status is. But we can't jump ahead of this other government agency and say, okay, well, you have completely unrestricted access to prosecute patent applications for the office for an unlimited period of time when he's still here temporarily. He's still just working at this time for the one law firm. We can't get out ahead of this other government agency. Are there any other circumstances in which you seek to determine whether someone who is a patent applicant is in it for the long haul? In other words, if somebody who's 88 years old wants to apply to be before the patent office, do you make them certify that they'll continue to practice for a minimum of four years, say, to make sure that the average patent application that might be filed would be completed? Or do you make them say that they'll be affiliated with another lawyer for that purpose? Your Honor, I'm not aware of another situation like that, but I am aware that we have a massive role of practitioners for the office and we're engaging in regular efforts annually to update our roles, make sure that people are still practicing, make sure if they're not practicing that they are removed from the roles. It's an administratively burdensome task just to maintain the permanently registered roles. You can imagine if you added another 10, 20, 30,000 people who are coming in and out of the country for a year or two to that permanent list, it would overwhelm the offices, what it's currently doing just to maintain its fully registered practitioners. Whether Dr. Chang, your point is well taken, whether Dr. Chang is an alien or not, it's really, the point is that he's here temporarily. And so that's why he's not a good fit with a permanently registered practitioner. If the Court has no further questions, I'll conclude the argument. Okay. Thank you, Ms. Dunfield. So I only have a few points to add to that. Can I ask you first, is it true that there is no reciprocity with Taiwan despite what you represented during your opening argument? There's no reciprocity, no, between Taiwan and U.S. There's not? There's not. But you didn't, I thought in your opening argument here you told us there was. No, I told you that if you are a U.S. citizen, if you go to Taiwan and pass the patent bar in Taiwan, you can practice in Taiwan. But there's no reciprocity or agreement between the two countries saying a Taiwanese registered patent attorney can practice before the patent office here in the States. Okay. Okay. So I think the point I'm going to, the final point I'm going to make is that immigration status of an alien practitioner is really none of the patent office's business. It's really up to the individual patent attorneys to determine whether they can be employed and whether they're entitled to any payments. And they are also, their payment received in this country is not only subject to the patent office's license, but also subject to their tax liabilities. So if the patent office can do the thing that they are doing right now in this case, they can equally make a rule saying patent practitioners, please give us your 1040 forms so that we make sure that you pay federal income tax. Right? Well, I think there's a difference. They're not doing this to enforce the immigration law, though sometimes there are hints of that. What they're really saying is we're worried about the interests of the clients who are represented before the patent office. And if you were only here for two years, you can't complete the representation. And if you're freelancing and not associated with a firm, that those people may be a freak. Yeah, I'm glad you bring up this point, Your Honors. Actually, there are more than 50% of the cases filing in the United States that were foreign or regional. So there's actually no point for the person to physically stay in this country to represent people. There are electronic filings these days. You can stay in your own country, represent clients from your own country, and then file a paper in the patent office. Only if it's reciprocity, though. Well, yeah, there's reciprocity. But as I said, reciprocity is just one of the reasons that the United States don't want people from other countries to represent clients in other places. But the thing is the patent office is currently allowing citizens in the other country, regardless of their current status, to represent anyone from around the world to file a paper in the patent office. So I don't see a real rationale for limiting full registration for anyone. All right. Thank you, Mr. Chang. Thank you. The case is submitted.